LUCIA MONZOLINO, PLAINTIFF-RESPONDENT, v. ABRAHAM GROSSMAN AND MARY GROSSMAN, DEFENDANTS-APPELLANTS, AND IN THE ALTERNATIVE JACK JACOBS AND IRVING TRAVIS, INDIVIDUALLY OR AS CO-PARTNERS TRADING UNDER THE NAME OF MARGARET, DEFENDANTS.

Submitted May 26, 1933—Decided September 27, 1933.

For the appellants, *William V. Rosenkrans.*

For the respondent, *Mackay & Mackay.*

The opinion of the court was delivered by

HETFIELD, J. This was a suit in the Supreme Court, tried in the Bergen Circuit, which resulted in a judgment of $2,000 against the appellants and the defendant Jack Jacobs, who has not appealed. There is little or no dispute as to the facts of the case, which show that the present appellants were the owners of certain store premises situated at No. 129 Main street, Hackensack, which, on February 17th, 1928, they leased to the defendant Jacobs for a term of five years, to commence on the first day of March, 1928. Subsequently, with the consent of his landlords Jacobs sublet part of the premises to the defendant, Irving Travis, in whose favor the jury rendered a verdict of no cause of action. Jacobs engaged one Bernard Turteltaub to erect an awning in front of the leased premises, which, without the knowledge of the owner, was done on February 21st, 1928, or several days before his term under the lease would commence. On October 23d, 1929, Travis attempted to lower the awning, and when it was about half way down, the north end of it fell to the sidewalk; and the respondent, who was passing the premises, was struck on the head by part of the structure.

The respondent contends that the landlords were liable, because of the fact that the awning, when it was erected, did not meet the requirements of an ordinance of the city of Hackensack, which provided that no person should maintain any drop awning extending over the sidewalk, which when lowered, would be less than seven feet above such sidewalk; and claims that the violation thereof constituted a nuisance, maintained by the landlords prior to the commencement of the lease, and continued by them until the date of the accident, as the landlords had power under the lease, to enter the said premises, and abate any nuisance created by the tenant, or to make any necessary repairs which the tenant might fail or neglect to do, as required by the contract. It is true that an owner of land is liable if he creates a nuisance and then demises the land with the nuisance, although he is out of occupation, and also, if the nuisance was erected on the land by a stranger, and he knowingly maintains it. In the

present case, the awning was erected without the knowledge of the owners; and while Abraham Grossman visited the premises subsequent to the tenant taking possession, there is no proof to show that the condition of the awning at any time during those visits was such as would indicate that it was unsafe or improperly erected.

The evidence submitted by the respondent for the purpose of showing a violation of the city ordinance, with respect to the height of the awning at the time it was erected, is entitled to little or no credit. The witness, Bernard Turteltaub, who was engaged by the tenant, Jacobs, to construct the awning, testified at first that he measured the awning when it was first installed, and that it was seven feet high. His attention was then called to testimony he had given at a previous trial, and he changed the dimensions to eighty-three and one-half inches, or a half inch less, and stated that eighty-three and one-half and eighty-four inches would be practically the same. He was then examined by the court, and gave the following testimony:

"*Q*. The first time you put it up what was the distance from the sidewalk to the——— *A*. When I measured the job and put the mark where the awning was supposed to go from, it would be—the mark was placed at seven foot height. *Q*. You did that yourself? *A*. I did that myself. Whether the workmen placed it there or not, that I don't know, but I put the mark there for seven foot. *Q*. Did you inspect it after it was up? *A*. I saw it with my eye. *Q*. You did not measure it? *A*. No, sir. *Q*. So you do not know whether it was seven feet or not from the ground when it was actually put up? *A*. Well, I really couldn't say."

The only other proof produced to show the height of the awning, was the testimony of George Plump, who stated, in substance, that he had measured the awning about two and one-half years after the accident had occurred, and more than four years subsequent to the installation of the awning; and found that it was six feet ten inches in height. He made the examination after the awning had been replaced by reason of the accident. It was contended, that this testimony was

admissible, because Turteltaub testified that when he replaced the awning, he had ordered it to be put in the same place as the old one, but was not sure that this was done. We think that it was error to allow testimony of this character to stand. Neither a single nor continuous violation of a city ordinance constitutes a nuisance, even though the ordinance so declares it, unless the act of violation amounts to a nuisance and has that character. However, if there had been sufficient testimony to indicate that the ordinance in question had been violated, there was no proof to show that the violation had any causal connection with the injuries, as the awning was only part way down when the accident happened; and it cannot be said that the awning was of dangerous construction, or a nuisance *per se;* and no proof was offered to show that the erection or condition of the awning was ever called to the attention of the owners.

We conclude that the appellants were entitled to either a nonsuit or direction of a verdict in their favor; and therefore the judgment under review will be reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ. 15.